# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
May 2, 2011 Session

## JERRY GARRISON, et al., v. ANDY E. BICKFORD, et al.

### Appeal from the Circuit Court for Bledsoe County
### No. 4236      Hon. Buddy D. Parry, Judge

### No. E2010-02008-COA-R9-CV-FILED-JULY 29, 2011

Plaintiffs brought this action for the wrongful death of their son, and also for their damages arising from "negligent infliction of emotional distress". State Farm Mutual Insurance Company filed a Motion for Partial Summary Judgment on the grounds that its policy afforded no coverage for a negligent infliction of emotional distress. The Trial Court overruled the Motion but proposed a Rule 9 appeal, which this Court granted. We reverse the Trial Court on this issue and grant the summary judgment motion.

### Tenn.  R. App. P.9 for Interlocutory Appeal; Judgment of the Circuit Court Reversed and Remanded.

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Joseph B. Klockenkemper, II., Nashville, Tennessee, for the Unnamed Defendant/Appellant, State Farm.

Joseph H. Crabtree, Jr., Athens, Tennessee, for the appellees, Jerry Garrison and Mary Garrison.

# OPINION

## Background

The case arises from an automobile accident that occurred on June 9, 2006 that caused the death of Michael Garrison, age 18. The accident occurred near the Garrison home, when a motor vehicle operated by defendant Andy Bickford struck a minibike ridden by the decedent, Michael Garrison. Michael's father, mother and brother were not present at the time of impact but they allege that they came to the scene of the accident soon after it happened and observed Michael's body and the destroyed minibike. A wrongful death suit was filed by Jerry and Martha[1] Garrison against Andy Bickford and Rita Bickford, the owners of the vehicle. Jerry, Martha and Daniel Garrison (hereinafter the "bystander plaintiffs") asserted bystander claims for negligent infliction of emotional distress as a result of the bodily injury and death of Michael. The Garrisons presented uninsured motorist claims against the unnamed defendant State Farm Mutual Automobile Insurance Company (State Farm) by serving a copy of the complaint on State Farm.

In response to the wrongful death and the bystander claims for negligent infliction of emotional distress, the insurer of the named defendant Andy Bickford paid the Garrison plaintiffs $25,000.00 for the wrongful death claims and $25,000.00 for the negligent infliction of emotional distress claims, which exhausted the liability limits of its policy. The named defendant Andy Bickford was dismissed from the suit. Moreover, under the uninsured motorist policy, the unnamed defendant State Farm paid $75,000.00 to Jerry and Mary Garrison for the wrongful death claim, which State Farm represents is the "full extent remaining of its "Each Person" limit of $100,000.00. The "Each Person" limit in the State Farm policy provides:

> The limit shown under "Each Person" is the most we will pay for all damages resulting from bodily injury to any one insured injured in any one accident, including all damages sustained by other insureds as a result of the bodily injury.

The State Farm policy defines bodily injury as follows:

> Bodily injury means bodily injury to a person and sickness, disease, or death that results from it.

---

[1]Mrs. Garrison's correct name is apparently "Mary" and she was incorrectly identified as "Martha" in the suit.

Pursuant to the settlement agreement, State Farm, Jerry and Mary Garrison dismissed all claims for the bodily injury and wrongful death of Michael and all related claims of loss of services, loss of consortium. The bystander claims for intentional infliction of emotional distress were not dismissed.

State Farm maintained that its payment of $75,000.00 exhausted the "Each Person" policy limits applicable to the bodily injury and death of Michael Garrison including damages sustained by other insureds as a result of the bodily injury and death of the decedent. The Garrison plaintiffs disagreed with State Farm's position regarding the application of the "Each Person" provisions and claimed that their bystander negligent infliction of emotional distress claims were not restricted to the "Each Person" limit for uninsured motorist coverage applicable to the bodily injury to any one insured as set forth in the policy.

State Farm then filed Motion for Summary Judgment, which plaintiffs opposed. The Trial Court denied the Motion for Summary Judgment, but State Farm filed a Motion to Alter or Amend the Order denying its Motion for Summary Judgment, and also filed a Supplemental Motion for Summary Judgment. The Trial Court denied State Farm's motions and stated in its order that its denial of the motions was based on the reasoning expressed in the Indiana case *State Farm Mutual Automobile Insurance Co. v. Jakupko,* 881 N.E.2d 654 (Ind.2008). Based on *Jakupko*, the Trial Court concluded as follows:

> . . . [t]he statutory provisions of Tenn. Code Ann. § 56-7-1201(a)[2] are broader than the definition of "bodily injury" contained in the State Farm car policy, and therefore, despite language contained in the State Farm policy that the limit for uninsured motorist coverage shown under the "Each Person" limit is the most amount that will be paid "for all damages resulting from **bodily injury** to any one **insured** injured in any one accident, including all damages sustained by other insureds as a result of that **bodily injury**", the Court is of the opinion that said language is not enforceable to limit recovery in the present case to the single "Each Person" limit for uninsured motorist coverage as against claims of bystander negligent infliction of emotional distress.

---

[2] Tenn. Code Ann. § 56-7-1201 (a), the uninsured motorist statute provides: "Every automobile liability insurance policy delivered, issued for delivery or renewed in this state, covering liability arising out of the ownership, maintenance, or use of any motor vehicle designed for use primarily on public roads and registered or principally garaged in this state, shall include uninsured motorist coverage, subject to provisions filed with and approved by the commissioner, for the protection of persons insured under the policy who are legally entitled to recover compensatory damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting from injury, sickness or disease. "

(emphasis supplied, footnote added).

State Farm's Interlocutory Appeal was granted by this Court and the proceedings below were stayed pending resolution of this Appeal.

**Issue Presented for Review**

Whether the Trial Court erred in denying State Farm's motions for summary judgment when, despite the definition of "Bodily Injury" contained in the policy, and despite the language set forth in the policy providing that the "Each Person" limit is the most that can be paid under uninsured motorist coverage for all damages resulting from bodily injury to any one insured "including all damages sustained by other insureds as a result of that bodily injury," the trial court, under the uninsured motorist statute, did not enforce said terms of the policy regarding uninsured motorist coverage as against claims for bystander negligent infliction of emotional distress?

The scope of coverage and the insurer's duty to defend are questions of law that may appropriately be resolved by summary judgment when, as here, the relevant facts are undisputed. *American Indem. Co. v. Foy Trailer Rentals, Inc.*, No. W2000-00397-COA-R3-CV, 2000 WL 1839131 at * 2 (Tenn. Ct. App. Nov. 28, 2000)(citing *Standard Fire Ins. Co. v. Chester O'Donley & Associates, Inc*, 972 S.W.2d 1, 5 (Tenn. Ct. App. 1998); *St. Paul Fire and Marine Ins. Co. v. Torpoco*, 879 S.W.2d 831, 834 (Tenn.1994)). Similarly, the interpretation of written agreements is a question of law. Questions of law are reviewed by this Court *de novo* on the record with no presumption of correctness afforded to the trial court. *Maggart v. Almany Realtors, Inc.,* 259 S.W.3d 700, 703 (Tenn. 2008)(citing *Guiliano v. Cleo, Inc.,* 995 S.W.2d 88, 95 (Tenn. 1999); *Union Planters Nat'l Bank v. Am. Home Assurance Co.,* 865 S.W.2d 907, 912 (Tenn. Ct. App.1993)).

**Discussion**

State Farm argues that under the State Farm uninsured motorist policy at issue (hereinafter "the Policy") no further uninsured motorist coverage is available regarding the bystander negligent infliction of emotional distress claims of plaintiffs. It maintains that because such bystander emotional distress claims are claims for emotional injury, they are not claims for bodily injury under Tennessee law nor do such claims constitute bodily injury claims as defined by the Policy. State Farm further contends that even if the bystander claims for negligent infliction of emotional distress were compensable under the Policy, they would be compensable as damages under the "Each Person" limit applicable to the bodily injury to the decedent as the "Each Person" limit applicable to the decedent, by the terms of the Policy, includes "all damages sustained by other insureds as a result of that bodily injury" to the

-4-

decedent. State Farm justifies this stance based on the fact that it was the observation of the decedent's injuries after they occurred that caused plaintiffs to sustain emotional distress.

Plaintiffs counter that the provisions of Tenn. Code Ann. §56-7-1201 (a) make the Policy unenforceable to limit recovery to the single "Each Person" limit for uninsured motorist coverage as against the plaintiffs' claims of bystander negligent infliction of emotional distress.

The Policy provides uninsured motor vehicle coverage for "bodily injury" with coverage limits of $100,000.00 "each person" and $300,000.00 "each accident". "Bodily injury" is defined as "bodily injury to a person and sickness, disease, or death that results from it." The uninsured motor vehicle coverage for bodily injury limits for "each person" and "each accident" is set out  defined in the Policy as follows:

> The limit shown under "Each Person" is the most **we** will pay for all damages resulting from **bodily injury** to any one **insured** in any one accident, including all damages sustained by other **insureds** as a result of that **bodily injury**. The limit shown under "Each Accident" is the most **we** will pay, subject to the limit for "Each Person" for all damages resulting from **bodily injury** to two or more **insureds** injured in the same accident.

(emphasis supplied in policy).

It is undisputed that decedent as well as the bystander plaintiffs are insureds under the policy. The fact that the decedent sustained bodily injury in the subject accident that resulted in his death is also not in dispute. State Farm's position is that bystander claims for negligent infliction of emotional distress are not "bodily injury" under Tennessee law or under the policy.  It also contends that even if the bystander plaintiffs' claims for negligent infliction of emotional distress are claims for "damages" sustained by them as a result of their witnessing the severe bodily injuries suffered by the decedent, their claims would not be compensable under the statute because the "each person" limits of the policy of $100,000.00 limit was already met by the payment for the wrongful death claim.

Plaintiffs argue that the Trial Court was correct when it found that the statutory provisions of Tenn. Code Ann. § 56-7-1201 are broader than the definition contained in the Policy and that the "each person" limits contained in the policy were not enforceable to limit the bystander's recovery for damages. Tenn. Code Ann. § 56-7-1201 provides:

> (a) Every automobile liability insurance policy delivered, issued for delivery or renewed in this state, covering liability arising out of the ownership, maintenance, or

use of any motor vehicle designed for use primarily on public roads and registered or principally garaged in this state, shall include uninsured motorist coverage, subject to provisions filed with and approved by the commissioner, for the protection of persons insured under the policy **who are legally entitled to recover compensatory damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting from injury, sickness or disease.**

(1) The limits of the uninsured motorist coverage shall be equal to the bodily injury liability limits stated in the policy.

2) However, any named insured may reject in writing the uninsured motorist coverage completely or select lower limits of the coverage but not less than the minimum coverage limits in § 55-12-107. . . .

Tenn. Code Ann. § 56-7-1201(a)(1)(2)(emphasis added).

We first must determine whether the claims of the bystander plaintiffs for negligent infliction of emotional distress are covered by the Policy under the "each occurrence" provisions of the Policy. If they are, we must then decide whether the "each person" limits are applicable to the claims. Finally, if we find that the "each person" limit is applicable, we are required to decide if the "each person" limits in the Policy is unenforceable because it is contrary to the stated purpose of the Uninsured Motor Vehicle Act. The stated issues appear to be one of first impression for Tennessee courts.

We provided a comprehensive discussion of the legal principles governing the interpretation of insurance policies in *VanBebber v. Roach*, 252 S.W.3d 279, 283-84 (Tenn. Ct. App. 2007):

Courts interpret insurance policies using the principles that guide the construction of other contracts. *Am. Justice Ins. Reciprocal v. Hutchison,* 15 S.W.3d 811, 814 (Tenn.2000). The goal is to ascertain and enforce the intent of the contracting parties. In *Tata v. Nichols,* 848 S.W.2d 649 (Tenn.1993), the Supreme Court explained the analysis to be applied when construing insurance policies:

Insurance contracts ... should be construed so as to give effect to the intention and express language of the parties. Words in an insurance policy are given their common and ordinary meaning. Where language in an insurance policy is susceptible of more than one reasonable interpretation, however, it is ambiguous. Where the ambiguous language limits the coverage of an insurance policy, that language must be construed against the insurance company and in

favor of the insured. [*Tata*] at 650 (citations and quotation marks omitted). *See also Harrell v. Minn. Mut. Life Ins. Co.,* 937 S.W.2d 809, 814 (Tenn.1996).

Questions regarding the interpretation of written contracts involve legal rather than factual issues. *Brandt v. Bib Enters., Ltd.,* 986 S.W.2d 586, 592 (Tenn .Ct. App.1998). Furthermore, scope of coverage issues present questions of law. *Pile v. Carpenter,* 118 Tenn. 288, 99 S.W. 360, 362 (1907). Hence, on these matters, our scope of review is *de novo* on the record with no presumption of correctness as to the trial court's conclusions of law. *Rainey v. Stansell,* 836 S.W.2d 117, 118 (Tenn. Ct. App.1992).

Courts will look to the material contained within the four corners of the instrument to ascertain its meaning as an expression of the parties' intent. *Bob Pearsall Motors, Inc. v. Regal Chrysler–Plymouth, Inc.,* 521 S.W.2d 578, 580 (Tenn.1975). The words of the contract should be given their usual, natural, and ordinary meaning. *St. Paul Surplus Lines Ins. Co. v. Bishops Gate Ins. Co.,* 725 S.W.2d 948, 951 (Tenn. Ct. App.1986).

In determining whether the meaning of a contract is clear or ambiguous, courts apply the following principles. The language in dispute must be examined in the context of the entire agreement. *Cocke County Bd. of Highway Commrs. v. Newport Utils. Bd.,* 690 S.W.2d 231, 237 (Tenn.1985). The language of a contract is ambiguous when its meaning is uncertain and when it can be fairly construed in more than one way. *Farmers–Peoples Bank v. Clemmer,* 519 S.W.2d 801, 805 (Tenn.1975). "A strained construction may not be placed on the language used to find ambiguity where none exists." *Id.*

Insurance policies are strictly construed in favor of the insured. *Sturgill v. Life Ins. Co. of Georgia,* 62 Tenn. App. 550, 465 S.W.2d 742, 744 (1970). If a contract of insurance is ambiguous and susceptible to two reasonable meanings, "the one favorable to the insured must be adopted." *Boyd v. Peoples Protective Life Ins. Co.,* 208 Tenn. 280, 345 S.W.2d 869, 872 (1961); *Sturgill,* 465 S.W.2d at 744.

*VanBebber v. Roach* at 283-84.

The elements for a bystander's claim for negligent infliction of emotional distress when the bystander does not witness the actual accident that caused another's injuries was set forth in *Eskin v. Bartee*, 262 S.W.3d 727 (Tenn. 2008). In *Eskin* claims for negligent infliction of emotional distress were made by two family members of a child who was seriously injured in an automobile accident. The family members were not present at the time of the accident but they alleged that they had sustained severe emotional injuries after

they observed him lying on the pavement in a pool of blood a short time after the accident had occurred. The insurance company moved for a partial summary judgment on the negligent infliction of emotional distress claim because neither the injured child's mother nor his brother had seen or heard the injury-producing accident. The motion was granted by the trial court, but the Court of Appeals reversed and in an appeal to the Supreme Court, the Supreme Court held that persons who observe an injured family member shortly after an injury-producing accident may pursue a claim for negligent infliction of emotional distress. *Id*. at 729-30 (Tenn. 2008).

The Supreme Court reviewed the history of the tort of negligent infliction of emotional distress, and then engaged in a detailed review of the development of bystander claims of negligent infliction of emotional distress in Tennessee and set forth the following criteria:

> When a plaintiff did not witness the injury-producing event, the cause of action for negligent infliction of emotional distress requires proof of the following elements: (1) the actual or apparent death or serious physical injury of another caused by the defendant's negligence, (2) the existence of a close and intimate personal relationship between the plaintiff and the deceased or injured person, (3) the plaintiff's observation of the actual or apparent death or serious physical injury at the scene of the accident before the scene has been materially altered, and (4) the resulting serious or severe emotional injury to the plaintiff caused by the observation of the death or injury.

*Id*. at 739-40 (Tenn. 2008).

Thus, the cause of action set forth by plaintiffs, bystander negligent infliction of emotional distress, is well established in Tennessee.

State Farm, however, contends that emotional distress is not "bodily injury" under either Tennessee law or under the Policy, and thus, the Policy offers no coverage for plaintiffs' claims. The uninsured motor vehicle coverage for bodily injury limits for "each person" and "each accident" is set out in the Policy as follows:

> The limit shown under "Each Person" is the most **we** will pay for all damages resulting from **bodily injury** to any one **insured** in any one accident, **including all damages sustained by other insureds as a result of that bodily injury**. The limit shown under "Each Accident" is the most **we** will pay, subject to the limit for "Each Person" for all damages resulting from **bodily injury** to two or more **insureds** injured in the same accident.

State Farm maintains that the adjective "bodily" means "of or pertaining to the body in distinction from the mind" and does not encompass the emotional distress claims made by the bystanders.

We considered this issue in the context of a CGL policy[3] in *Am. Indem. Co. v. Foy Trailer Rentals, Inc.*, W2000-00397-COA-R3-CV, 2000 WL 1839131 (Tenn. Ct. App. Nov. 28, 2000). The background for that case is that in an underlying suit, filed in federal court, an employee sued her employer for the gender and racial discrimination alleging that she sustained lost wages, embarrassment, humiliation, mental anguish, emotional pain and suffering, and loss of enjoyment of life due to the hostile, abusive, and offensive work environment created by the employer. *Id*. at * 1. The insurer filed a suit for declaratory judgment in state court, asking the court to determine whether it had an obligation to defend and indemnify the employer for the claims made in the employee's federal suit and whether the CGL policy provided coverage for the allegations made against the employer in the federal suit. *Id*. at * 2. The insurer then filed a motion for summary judgment, which was granted by the trial court upon a finding that the insurer did not have a duty to defend and indemnify the insured in the federal suit and that the policy did not provide coverage for the insured for the allegations made against it in the federal suit. We affirmed the trial court's action. *Id*.

The policy in that case provided "[w]e will pay those sums that the insured becomes legally obligated to pay as damages because of "**bodily injury**" or "property damage" to which this insurance applies . . . ." The policy defined "bodily injury" as "**bodily** injury, sickness or disease sustained by a person, including death. *Id*. at * 3. The insurer argued that the employee's allegations of embarrassment, humiliation, mental anguish, emotional pain and suffering did not rise to the level of "bodily injury" as contemplated in the CGL policy and we agreed based on the following cases:

> In *Bituminous Fire and Marine Insurance Company v. Izzy Rozen's, Inc.,* 493 F.2d 257, 261 (6th Cir.1974), a case arising out of the United States District Court for the Western District of Tennessee, the court cited *Provident Life & Accident Insurance Company v. Campbell,* 79 S.W.2d 292 (Tenn. Ct. App.1934), for the proposition that an insurance policy contemplates "some injury to the body of a physical nature in order to come within the definition of 'bodily injury.' " Additionally, in *Guardian Life Insurance Company of America v. Richardson,* 129 S.W.2d 1107 (Tenn. Ct. App.1939), this court stated that
>
> > [t]he word "disease," *unrestricted by anything in the context,* includes disease

---

[3] Commercial General Liability policy.

of the mind as well as disease of the body.

But, in the policy here involved, the word "disease" is "restricted" by the word "bodily"; and grammatically, the word "bodily" modifies "disease", as well as "injury"; and manifestly it was inserted for the purpose of excluding *mental disease.*

The adjective "bodily" means "of or pertaining to the body, in distinction from the mind."

[Richardson, 129 S.W.2d] at 1115 (emphasis in original) (internal quotations and citations omitted).

*Foy* at * 4.

Based on the cited case law, the court in *Foy* held that the employee's complaint did not allege any "bodily injury" as contemplated by the policy, and thus there was no duty to defend and indemnify under the CGL policy. *Id.* However, reliance on the holding in *Foy* requires further analysis as the definition of "bodily injury" in the *Foy* policy differed slightly from the definition at issue here. The *Foy* policy defined "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death, whereas the State Farm policy at issue here defines "bodily injury" as "bodily injury to a person **and** sickness, disease, or death that results from it. The insertion of the word "and" causes the adjective "bodily" to modify only the word "injury" and not "sickness and disease. Under the reasoning in *Richardson*, as there is no restriction on the words "sickness" or "disease" the coverage would include sickness or disease of both the body and mind. However, according to *Foy* and *Richardson*, the word "injury" **is** modified by the adjective "bodily", so an injury to the body or pertaining to the body, in distinction to the mind, must have been sustained by an insured that caused the sickness or disease. There are apparently no other Tennessee cases that have considered this issue.

The issue has been considered by numerous courts throughout the country with varying results, although the cases that found that "bodily injury" does not include emotional injury absent the presence of a physical injury to the body, significantly outweigh the number of cases that have held that "bodily injury" can encompass emotional distress alone.

Most of the courts addressing the issue have concluded the term "bodily" also modifies the terms sickness and disease, that "bodily" refers to some sort of physical harm, and that the definition of bodily injury in question is thus not ambiguous. *Evans v. Farmers Ins. Exchange,* 2001 WY 110, 34 P.3d 284 (Wyo.2001), at 286 (citing *Citizens Ins. Co. of*

-10-

*America v. Leiendecker*, 962 S.W.2d 446, 453; *Daley v. Allstate Ins. Co.*, 135 Wash.2d 777, 958 P.2d 990, 995 (1998)).

The case of *Citizens Ins. Co. of Am. v. Leiendecker*, 962 S.W.2d 446, 451 - 454 (Mo. Ct. App. 1998), held that the definition of "bodily injury" as "bodily harm, sickness or disease" is not ambiguous and refers to physical conditions of the body and not mental suffering or emotional distress. *Leiendecker* also lists dozens of cases that reached the same conclusion. *Id*. at 452 - 453. Since *Leiendecker* was published in 1998, many more courts have considered the issue of whether the term "bodily injury", when used in an insurance policy, includes mental suffering or emotional distress. The trend noted by the *Leiendecker* Court, that the majority of courts find that emotional distress is not encompassed within the meaning of "bodily injury", has continued. *See* the following cases *National Fire Ins. Co. of Hartford v. NWM-Oklahoma, LLC, Inc.*, 546 F. Supp. 2d 1238, 1246 (W.D. Okla. 2008)(Oklahoma law)(commercial liability policy); *Home Insurance Com. v. Hartford Fire Ins. Co.*, 379 F. Supp. 2d 1282, 1289 (M.D. Ala. 2005), *aff'd,* 164 Fed. Appx. 950 (11th Cir. 2006)(S. Carolina law)(CGL policy); *Johnson v. Am. Family Ins.,* 827 N. E.2d 403, 407 (Ohio App. Ct. 2005)(UM coverage); *Nance v. Phoenix Ins. Co.*, 118 Fed. Appx. 640, 642 (3d Cir. 2004) (Pennsylvania law)(home owners policy); *Tackett v. American Motorists Ins. Co.*, 584 S. E.2d 158, 166 (W. Va. 2003)(CGL policy); *Armstrong v. Federated Mut. Ins. Co.*, 785 N.E.2d 284, 292-93 (Ind. Ct. App. 2003)(UM policy); *Farm Bureau Ins. Co. of Nebraska v. Martinsen*, 659 N. W.2d 823, 827 (Neb. 2003)(automobile policy); *Galgano v. Metropolitan Property and Cas. Ins. Co.*, 838 A.2d 993, 999 (Conn. 2004)(UM policy); *Smith v. Animal Urgent Care, Inc.*, 542 S.E.2d 827, 830-31 (W. Va. 2000)(CGL policy); *SCR Medical Transp. Services, Inc. v. Browne*, 781 N.E.2d 564, 571 (Ill. Ct. App. 2002)(automobile liability policy). Insurance Claims and Disputes 5th § 11:2, Insurance Claims & Disputes: Representation of Insurance Companies & Insureds Database, updated March 2011 Allan D. Windt.

Most of the cases that conclude that "bodily injury" does not encompass emotional distress or other mental suffering have considered insurance policies where "bodily injury" is defined as "bodily injury, sickness or disease and the courts have concluded that the word "bodily" not only modifies the word "injury" but also the words "sickness" and "disease". The courts have held there is no ambiguity in the policy. Although the State Farm policy at issue differs from the policies in those cases as it defines "bodily injury" as "bodily injury to a person **and** sickness, disease, or death that results from it", it is also not ambiguous either as the plain language of the policy clearly contemplates that first there must be a physical injury to the body **and** that the injury to the body must then result in sickness, disease or death for the policy to afford coverage. As discussed above, pursuant to the reasoning set forth in the Tennessee cases *Foy*, 2000 WL 1839131, *Campbell*, 79 S.W.2d 292 and *Richardson*, 129 S.W. 2d 1107, and under the Policy's language, the sickness suffered

-11-

could be either physical or mental, as long as it is caused by a physical injury to the body. Accordingly, the policy at issue does not cover the bystander claims for negligent infliction of emotional distress as there is no allegation that the bystander plaintiffs sustained any injury to their bodies that caused them emotional sickness or disease and the "each occurrence" provision of the Policy is not applicable.

As discussed in *Allstate Ins. Co. v. Clohessy*, 32 F.Supp. 2d 1333 (M.D. Fla. 1998), *Galgano v. Metro. Prop. & Cas. Ins. Co.,* 38 A.2d 992, 994 (Conn. 2004), and *Allstate Ins. Co,. v. Tozer,* 392 F.3d 950 (7th Cir. 2004), a bystander injury is not "bodily injury" to the bystander but is an emotional injury sustained by the bystander as a result of observing the bodily injury of another, thus it falls within the **damages** covered by the "each person" provision of the policy.

In further support of this conclusion, Tennessee courts have held that loss of consortium claims, which arise out of injury to another and not "bodily injury" to the claimant, fall under the "each person" limits of liability in an insurance policy. *Carter v. USA Prop. & Cas. Ins*, 03A01-9810-CV-00327, 1999 WL 652423 (Tenn. Ct. App. Aug. 24, 1999).

Finally, the Trial Court refused to enforce the "each person" provision of the Policy when it denied State Farm's motions based on the reasoning expressed in the Indiana case *State Farm Mutual Automobile Insurance Co. v. Jakupko,* 881 N.E.2d 654 (Ind. 2008) concluding that ". . . [t]he statutory provisions of Tenn. Code Ann. § 56-7-1201(a) are broader than the definition of "bodily injury" contained in the State Farm car policy, and therefore . . . the Court is of the opinion that said language is not enforceable to limit recovery . . . in the present case to the single "Each Person" limit for uninsured motorist coverage as against claims of bystander negligent infliction of emotional distress." The Trial Court's reliance on *Jakupko* was misplaced as the parties in *Jakupko* who claimed damages for emotional distress also had sustained bodily injury. The Supreme Court of Indiana made it clear that its conclusion in *Jakupko* would be entirely different if the parties claiming bystander emotional distress had not also sustained bodily injury in the accident.

The *Jakupko* Court concluded that the definition of "bodily injury" included emotional distress damages, *but only if that distress arose from a bodily touching or direct physical impact. Jakupko* at 658–59.

Interestingly, on the same day the Indiana Supreme Court published *Jakupko,* it published *State Farm Mutual Insurance Co. v. D.L.B.,* 881 N.E.2d 665 (Ind. 2008) wherein the court did not permit recovery from an uninsured/underinsured motorist policy for emotional distress. In *D.L.B.,* a four-year-old, D.L.B., was riding bicycles with his six year

old cousin when a vehicle struck and killed the cousin while D.L.B. looked on. D. L. B., who was not physically injured, suffered post–traumatic stress associated with watching the accident. *Id.* at 665. The Indiana Supreme Court was asked to decide whether "bodily injury" as defined in the UM policy at issue, includes the emotional distress suffered by D.L.B. The court distinguished *Jakupko*, noting that D.L.B. had not suffered a direct physical impact as the plaintiff had sustained in *Jakupko*. The court stated that "we note in *Jakupko* that the term "bodily injury" does not include emotional damage unless it arises from a bodily touching." The court held that because D.L.B. was not himself directly and physically impacted by the accident, he did not sustain a compensable "bodily injury" under the State Farm policy. The *D.L.B.* court relied upon *Armstrong v. Federated Mutual Insurance Co.,* 785 N.E.2d 284 (Ind. Ct. App.2003). In *Armstrong* the court held that the parents of a child killed in an automobile accident, who were apparently not near the accident when it occurred, were not entitled to recover UM benefits for emotional distress because they had not "suffered a physical impact in the accident that took their [daughter's] life." *Id.* at 293.

The Indiana Supreme Court published yet another opinion on February 28, 2008, *Elliott v. Allstate Insurance Co.,* 881 N.E.2d 662 (Ind.2008), that considered the identical issue as *D.L.B.* In *Elliot* the court followed the reasoning of *D.L.B.,* and *Jakupko* and held because the occupants of a vehicle involved in an accident were themselves physically injured they could recover UM benefits for emotional distress damages associated with witnessing another occupant's nearly fatal injuries. *Elliot* at 664.

Continuing the saga, the following year, the Indiana Supreme Court returned to the issue of negligent infliction of emotional distress claims and UM coverage in *Bush v. State Farm Mutual Automobile Insurance Co.,* 905 N.E.2d 1003 (Ind.2009). The court held that the language of State Farm's policy definition of "bodily injury" was "consistent with the Indiana uninsured motorist statute as it required that the insured sustain bodily injury to trigger uninsured motorist coverage." *Bush* at 1005. In this case, there are no allegations that the Garrison bystander plaintiffs sustained bodily injury in the accident. Accordingly, the Trial Court's reliance on *Jakupko* was in error, when it denied State Farm's motion for summary judgment.

The bystander plaintiffs' claims for negligent infliction of emotional distress caused by observing the fatal injuries of Michael Garrison were claims for "damages resulting from the bodily injury" of Michael Garrison and clearly fell within the liability limitations contained in the "each person" provisions of the Policy. As the $100,000.00 coverage the policy afforded under the "each person" limits had been exhausted, there was no coverage available to cover the bystander claims.

We hold the Trial Court erred when it denied State Farm's motion for summary judgment, and the Trial Court's Judgment is reversed and the Motion for Summary Judgment is granted to State Farm. The cause is remanded to the Trial Court, and the cost of the appeal is assessed to plaintiffs Jerry and Mary Garrison.

_____
HERSCHEL PICKENS FRANKS, P.J.