ATTORNEYS FOR APPELLANT
Karl L. Mulvaney
Nana Quay-Smith
Candace L. Sage
Indianapolis, Indiana

ATTORNEYS FOR AMICI CURIAE
INSURANCE INSTITUTE OF INDIANA, INC.,
NATIONAL ASSOCIATION OF MUTUAL
INSURANCE COMPANIES, AND PROPERTY
CASUALTY INSURERS ASSOCIATION
OF AMERICA `
Robert B. Clemens
George T. Patton, Jr.
Bryan H. Babb
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES
John F. Townsend, III
Indianapolis, Indiana

W. Scott Montross
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE
THE INDIANA TRIAL LAWYERS
ASSOCIATION
Jeffrey S. Wrage
Thomas F. Macke
Valparaiso, Indiana

# In the
# Indiana Supreme Court

No. 29S02-0704-CV-140

**FILED**

Feb 28 2008, 2:17 pm

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

*Appellant (Defendant below)*,

v.

PATRICIA JAKUPKO, NICHOLAS JAKUPKO,
AND MATTHEW JAKUPKO,

*Appellees (Plaintiffs below)*.

Appeal from the Hamilton Superior Court No. 1, No. 29D01-0308-CT-682
The Honorable Steven R. Nation, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 29A02-0603-CV-207

**February 28, 2008**

**Sullivan, Justice.**

Richard Jakupko suffered severe injuries and his wife and children emotional distress in an automobile accident caused by an underinsured motorist. Their insurance company contends that their underinsured motorist insurance policy subjects any amount the wife and children can recover for their emotional distress to the per person liability cap applicable to Richard. Such a limitation would violate the requirements of Indiana's underinsured motorist insurance statute and be void; the wife and children are each entitled to their own per person liability limit.

## Background

In July 2002, Richard Jakupko was in an automobile accident caused by Brianne Johnson; Johnson was driving an underinsured auto. Richard, his wife, Patricia, and their children, Nicholas and Matthew, who were passengers in Richard's car, each sustained bodily injuries. Richard's injuries were exceptionally severe, including quadriplegia and a closed head injury resulting in permanent mental deficits. Patricia, Nicholas, and Matthew each suffered emotional distress from being in the accident.

Because the Jakupkos' damages greatly exceeded the limits of Johnson's coverage, they sought compensation under the terms of an automobile insurance policy Richard had with State Farm Mutual Automobile Insurance Company. The State Farm policy included underinsured motorist coverage coverage in the amount of $100,000 for "each person" and $300,000 for "each accident." State Farm paid $100,000 to the Jakupkos pursuant to this provision; when they sought to recover an additional $200,000 for Patricia's, Nicholas's, and Matthew's emotional distress, State Farm took the position that it had satisfied its obligations under the policy when it had paid the limits for Richard's injuries. In State Farm's view, because Patricia's, Nicholas's, and Matthew's claims for emotional distress were caused by Richard's injuries, they were included in the "each person" limit of liability for his bodily injury claim.

This litigation ensued. The trial court and Court of Appeals both ruled in favor of the Jakupkos. State Farm Mut. Auto. Ins. Co. v. Jakupko, 856 N.E.2d 778 (Ind. Ct. App. 2006). State Farm sought, and we granted, transfer. State Farm Mut. Ins. Co. v. Jakupko, 869 N.E.2d 454 (Ind. 2007) (table).

2

**Discussion**

**I**

We begin our analysis with several observations about what is not at issue in this case.

State Farm agreed to "pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle." (Appellant's App. at 70.) Not at issue is whether Patricia, Nicholas, or Matthew were "insured[s]" for this purpose; both sides agree that they all were.

More importantly, both sides agree that Patricia, Nicholas, and Matthew were "legally entitled" to pursue negligent infliction of emotional distress claims against Brianne Johnson, the driver of the underinsured vehicle. Like the plaintiff who was permitted to seek recovery in Shuamber v. Henderson, 579 N.E.2d 452, 456 (Ind. 1991), Patricia, Nicholas, and Matthew were inside the vehicle when it was struck by Johnson's automobile and sustained an impact. The impact was severe enough to have caused catastrophic injuries to Richard. Patricia, Nicholas, and Matthew claim to have suffered emotional trauma at least in part as a result of being involved in the impact and witnessing Richard being so severely injured. Shuamber dictates that they would be entitled to present their evidence. This is not a case that requires us to expound on the common law of negligent infliction of emotional distress.

The crux of this case is whether, as a matter of underinsured motorist and contract law, Patricia's, Nicholas's, and Matthew's claims are included within Richard's "each person" limitation on liability or are entitled to their own. The significance of this is obvious – State Farm contends that Patricia's, Nicholas's, and Matthew's claims are subject to the $100,000 "each person" limit of liability applicable to Richard's injuries. Because it has already paid Richard $100,000, State Farm argues that it has exhausted its liability for Patricia's, Nicholas's, and Matthew's emotional distress claims.

The coverage provisions of the policy provide:

3

UNDERINSURED MOTOR VEHICLE – COVERAGE "W"

We will pay damages for <u>bodily injury</u> an <u>insured</u> is legally entitled to collect from the owner or driver of <u>an underinsured motor vehicle</u>. The <u>bodily injury</u> must be caused by accident arising out of the operation, maintenance or use of an <u>underinsured motor vehicle</u>.

(App. at 70 (emphasis in original).)

The liability limits provisions of the policy provide:

The amount of coverage is shown on the declarations page under "Limits of Liability – W – Each person, Each Accident". Under "Each Person" is the amount of coverage [$100,000] for all damages due to <u>bodily injury</u> to one <u>person</u>. "<u>Bodily injury</u> to one <u>person</u>" includes all injury and damages to others resulting from this <u>bodily injury</u>. Under "Each Accident" is the total amount of coverage [$300,000], subject to the amount shown under "Each Person" for all damages due to <u>bodily injury</u> to two or more <u>persons</u> in the same accident.

(<u>Id.</u> at 72 (emphasis in original).)

Finally, the policy contains the following definition:

<u>Bodily injury</u> – means bodily injury to a <u>person</u> and sickness, disease or death which results from it.

(<u>Id.</u> at 62 (emphasis in original).)

Patricia's, Nicholas's, and Matthew's argument proceeds along the following line. First, they observe that the $100,000 "each person" coverage limitation applies to "damages due to bodily injury to one person." Second, they observe that the policy's definition of "bodily injury" refers to "sickness." Because in their view the emotional distress they suffered constituted "sickness" within the meaning of the policy, they are each entitled to their own $100,000 "each person" coverage limitation, up to the $300,000 per accident limitation.

State Farm has two answers to this. First, it is of the view that emotional distress is not

"sickness" within the meaning of the policy and so Patricia, Nicholas, and Matthew, while entitled to pursue negligent infliction of emotional distress claims against the tortfeasor, are not entitled to recover for their damages under the policy.[1]  Second, State Farm emphasizes additional language in the "Limits of Liability" section of the policy – that when it agreed to pay for "damages due to bodily injury to one person," it expressly provided that "'[b]odily injury to one person' include[d] all injury and damages to others resulting from this bodily injury."  (App. at 72.)  Because the damages Patricia, Nicholas, and Matthew claim, State Farm says, were the result of the bodily injury sustained by Richard, those damages are subject to the $100,000 "each person" coverage limitation applicable to Richard.

Patricia, Nicholas, and Matthew respond to State Farm's second argument by saying that the "includes all injury and damages to others resulting from this bodily injury" clause does not apply to them because they have their own independent limits on liability.

In summary, to determine whether Patricia, Nicholas, and Matthew are each entitled to their own "each person" coverage limitation, we must decide:

(1)  whether "bodily injury" as defined in the policy at issue in this case includes the emotional distress Patricia, Nicholas, and Matthew suffered; and, if so,

(2)  whether the fact that the policy provides that the coverage limit for bodily injury suffered by Richard "includes all injury and damages to others resulting from this bodily injury" precludes Patricia, Nicholas, and Matthew from having their own independent limits on liability.

**II**

A substantial number of courts have looked at these or closely related questions.  See All-

---

[1] The policy defines "bodily injury" as "bodily injury to a person and sickness, disease or death which results from it." The Legislature requires uninsured and underinsured motorist coverage applicable to "bodily injury, sickness or disease."  Ind. Code § 27-7-5-2(a)(1) (2004).  Because the policy cannot provide less coverage than that required by statute, Veness v. Midland Risk Ins. Co., 732 N.E.2d 209, 212 (Ind. Ct. App. 2000), we treat the policy as applying to "bodily injury, sickness or disease," notwithstanding the slight difference between the language of the policy and the language of the statute.

state Ins. Co. v. Tozer, 298 F. Supp. 2d 765, 769-70 (S.D. Ind. 2003) (citing cases from six jurisdictions favoring the Jakupkos' position and ten jurisdictions favoring State Farm's), rev'd, 392 F.3d 950 (7th Cir. 2004). We will limit our review to four cases with Indiana pedigrees.

## A

In Wayne Township Board of School Commissioners v. Indiana Insurance Co., 650 N.E.2d 1205 (Ind. Ct. App. 1995), trans. denied, an elementary school principal had sexually molested a student. The student sought damages from the principal and the school district for the "severe emotional and psychological trauma and distress" she suffered. The school district in turn sought coverage under a comprehensive general liability policy. Id. at 1207.

The policy provided coverage only for injuries within the policy definition of "bodily injury": "bodily injury, sickness or disease sustained during the policy period." In finding the student to have suffered bodily injury, the court held that "the policy definition of 'bodily injury' is not limited to physical injury to the body." The court reasoned that, while the policy first defined "bodily injury" as "bodily injury" in a circular fashion, so as to include physical injury, the policy "extend[ed] the meaning of 'bodily injury' beyond physical injury [to] include[ ] sickness and disease in the definition." Id. at 1210-11. The court said that "the average lay person reading the policy would not conclude that mental anguish is excluded from the ambit of 'sickness.'" Id. at 1211 (citing Lavanant v. Gen. Accident Ins. Co. of Am., 561 N.Y.S.2d 164, 168 (N.Y. App. Div. 1990)).

As such, Wayne Township supports the proposition that "bodily injury," as defined in the policy at issue in this case, includes the emotional distress Patricia, Nicholas, and Matthew suffered. For essentially the reasons given by the Court of Appeals in Wayne Township, we agree with this determination.

**B**

In <u>Medley v. Frey</u>, 660 N.E.2d 1079 (Ind. Ct. App. 1996), <u>trans. denied</u>, Medley's husband had suffered permanent, disabling injuries in an automobile accident caused by Schoonover.[2]  Schoonover's insurance carrier paid the per person limit to Medley's husband for the injuries he suffered in the accident but denied Medley's claim for loss of consortium on the grounds that it arose from the husband's injuries, for which it had already paid the limit of coverage.  <u>Id.</u> at 1080.

State Farm argues that Medley's wife's claim is analogous to the Jakupkos' claims: just as Medley's wife was unable to recover beyond her husband's per person limit for loss of consortium, Patricia, Nicholas, and Matthew should not be able to recover beyond Richard's per person limit.

While we agree that there are similarities between the two situations, we do not think that <u>Medley</u> dictates the result State Farm advocates here.  The insurance policy at issue in <u>Medley</u> provided coverage for "bodily injury" sustained by persons as a result of its insured's negligence.  The policy defined "bodily injury" as "bodily harm, sickness or disease."  Loss of consortium was not a "bodily injury" as defined in the policy; in fact, the policy specifically provided that damages for "loss of services" were included within the maximum limit of liability for each person.  It was on this basis that the court held that Medley was not entitled to recover for her loss of consortium beyond the policy limits paid to her husband.  <u>Id.</u> at 1080-81.

The court did emphasize the centrality of the definition of "bodily injury," noting that "[w]here the automobile liability policy includes loss of consortium or loss of services in the definition of 'bodily injury,' courts have logically concluded that the deprived-spouse's loss of consortium claim is a distinct 'bodily injury' and is not subject to the per person liability limit applicable to the injured-spouse, but is a separate 'bodily injury' within the meaning of the policy.  [See <u>Giardino v. Fierke</u>, 513 N.E.2d 1168 (Ill. Ct. App. 1987); <u>Allstate Ins. Co. v. Handegard</u>, 688 P.2d 1387 (Or. Ct. App. 1984)]."  <u>Id.</u> at 1081 n.1.

---

[2] Medley herself had also been a passenger in the vehicle.

This passage from Medley describes the case before us. Because Wayne Township dictates that the automobile liability policy includes the emotional distress Patricia, Nicholas, and Matthew suffered within its definition of "bodily injury," each is a distinct "bodily injury" within the meaning of the policy.

## C

The Wayne Township court also held that the term "bodily injury" does not include emotional damage unless it arises from a bodily touching. (It found that the "bodily touching . . . inherent to child molestation and the resulting emotional injury suffered by the victim of child molestation is bodily injury," Wayne Township, 650 N.E.2d at 1210.) Armstrong v. Federated Mutual Insurance Co., 785 N.E.2d 284 (Ind. Ct. App.), trans. denied, 804 N.E.2d 750 (Ind. 2003), cited this aspect of Wayne Township as meaning that "'bodily injury,' as used in certain insurance policies, might include an injury that is non-physical (e.g., emotional harm) in nature, but only if said injury was the result of a direct physical impact upon the insured who seeks recovery." Id. at 293. Armstrong involved the efforts of the parents of a 19-year-old woman killed in an automobile accident to recover for their loss of her love and companionship under the uninsured motorist coverage of their insurance policy. The parents had not been involved in the accident and the court held that they could not recover because neither had "suffered a physical impact in the accident that took [their daughter's] life." Id.

Because Patricia, Nicholas, and Matthew suffered direct physical impact while in the automobile collision in which Richard suffered his injuries, their situation is readily distinguishable from that of the parents in Armstrong. But we cite Armstrong because it features in the federal court case about to be discussed, and in another case we decide today. See State Farm Mut. Auto. Ins. Co. v. D.L.B., -- N.E.2d --, No. 89S05-0802-CV-102, slip op. (Ind. Feb. 28, 2008).

8

**D**

None of <u>Wayne Township</u>, <u>Medley</u>, or <u>Armstrong</u> is a precise analog to the one before us. Nor is the one we are about to discuss, but it is the closest. Kyle Keltner died after an automobile accident that happened while Kyle was a passenger in a car driven by Tozer. <u>Tozer</u>, 298 F. Supp. 2d at 768. Kyle's siblings, Kristina and Nicholas Keltner, were also passengers in the vehicle and suffered emotional distress as a result of witnessing their brother's fatal injuries. <u>Id.</u> Tozer's insurance carrier paid the policy limits with respect to Kyle Keltner's wrongful death claim; litigation in federal court ensued with respect to the siblings' claims. <u>Id.</u>

The insurance company relied on <u>Medley</u>, arguing that the siblings' emotional distress claims should be included in the "each person" limit of liability for their brother's wrongful death claim just as the <u>Medley</u> court had held that Medley's loss of consortium claim arose out of the bodily injury suffered by her husband and was, therefore, subject to her husband's "per person" policy limit. <u>Tozer</u>, 298 F. Supp. 2d at 770. But the federal district court said that the "key question [was] not whether the emotional distress is derivative or a by-product of another's injury, it [was] whether emotional distress falls within the policy definition of 'bodily injury.'" <u>Id.</u> at 771.

The policy at issue defined "bodily injury" as "physical harm to the body, sickness, disease or death," <u>id.</u> at 767, and the court looked to <u>Wayne Township</u>'s holding that the policy there "'extend[ed] the meaning of 'bodily injury' beyond physical injury'" to include emotional distress, <u>id.</u> at 771. In fact, the district court found <u>Medley</u> supportive of its conclusion, pointing to <u>Medley</u>'s observation (discussed <u>supra</u>) that where insurance policies included "loss of consortium" within the definition of "bodily injury," a separate "each person" limit of liability was available. <u>Id.</u>

As to <u>Armstrong</u>'s declaration that the injury at issue must be "the result of a direct physical impact upon the insured who seeks recovery," <u>Armstrong</u>, 785 N.E.2d at 293, the district court agreed but found that that requirement did not preclude the siblings from recovery. Unlike the claimants in <u>Armstrong</u>, the siblings had been involved in the accident that had taken

9

their brother's life – they had sustained physical impact within the meaning of <u>Wayne Township</u> and <u>Armstrong</u>. <u>Tozer</u>, 298 F. Supp. 2d at 772.

The insurance company had contended that <u>Armstrong</u> stood for something more, that because the emotional distress was not the result of the impact that the siblings had suffered but the impact that their brother had suffered, the siblings should be held subject to their brother's "each person" limit of liability, rather than enjoy one of their own. <u>Id.</u>

The district court's response was to look to our reasoning in <u>Shuamber</u>, where the mother and sister of a boy killed in an automobile accident in which they had all sustained physical impact were permitted to pursue claims of their own against the tortfeasor to recover for their emotional distress. <u>Id.</u> (discussing <u>Shuamber</u>, 579 N.E.2d at 453-56). The district court's reasoning appears to be that if this Court allowed the mother and sister to pursue emotional distress claims based on witnessing the boy's fatal injuries, we would allow the siblings a separate "each person" limit of liability when pursuing emotional distress claims based on witnessing their brother's fatal injuries. <u>Id.</u> at 773.

The United States Court of Appeals reversed. <u>Tozer</u>, 392 F.3d 950. For the appellate court, the case was one that only required construction of the insurance contract before it, not the language at issue in the policies in the other cases, nor the application of common law principles.

> <u>Medley</u> and <u>Armstrong</u> merely reiterate in this specific context what is generally true throughout Indiana insurance law: the extent of an insurer's liability is a matter of contract interpretation governed by the terms of the policy. The policy issued to the Tozers does not define "bodily injury" or the "each person" limit of liability with reference to whether the underlying claim is an independent or derivative tort action, or on whether the Keltner siblings state a valid claim of negligent infliction of emotional distress. These underlying questions of tort law are, therefore, irrelevant. Because the policy caps Allstate's liability for all damages "resulting from" Kyle's injuries at $100,000, and Nicholas's and Christina's emotional distress result from his injuries, the insurer's liability for these claims is exhausted.

<u>Id.</u> at 955 (citations omitted).

10

State Farm argues that, whether or not the emotional distress Patricia, Nicholas, and Matthew suffered constitutes distinct "bodily injuries" within the meaning of the policy, the policy (just like the one in Tozer) caps State Farm's underinsured motorist liability for all damages "resulting from" Richard's injuries at $100,000, and Patricia's, Nicholas's, and Matthew's emotional distress resulted from his injuries. As such, State Farm contends, Tozer dictates that its liability for these claims is exhausted.

We decline to apply the Seventh Circuit's Tozer holding to this case for the reasons set forth in the following part of this decision.

## III

Unlike Tozer, a third-party claim on a tortfeasor's policy, the claim here arises under a policy's underinsured motorist coverage provisions and so is subject to the requirements that the Legislature places on such coverage. In relevant part, the statute requires that each automobile insurance policy provide "coverage . . . for the protection of persons insured under the policy who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness or disease." I.C. § 27-7-5-2(a)(1).

It is well established that this statute sets the minimum standard of protection that the Legislature deems acceptable for uninsured and underinsured motorist coverage. Veness, 732 N.E.2d at 212. More specifically, it has long been our law that if a policy clause "is in derogation of the Indiana uninsured motorist statute, . . . such clause will be unenforceable regardless of the insurer's intent." Patton v. Safeco Ins. Co. of America, 148 Ind. App. 548, 267 N.E.2d 859, 862 (1971) (cited with approval in United Nat'l Ins. Co. v. DePrizio, 705 N.E.2d 455, 460 (Ind. 1999)).

In this case, Judge Steven R. Nation found that subjecting Patricia's, Nicholas's, and Matthew's claims to Richard's per person liability limit contravenes the statute, and we agree. Patricia, Nicholas, and Matthew are "legally entitled to recover damages" from Johnson, the "driver of an underinsured motor vehicle," because of their emotional distress, which we have

11

already determined to be "sickness" within the meaning of the policy. But the "includes all injury and damages to others resulting from this bodily injury" clause in the policy effectively reduces the amount of damages Patricia, Nicholas, and Matthew are entitled to by the amount, if any, of damages that Richard is entitled to. The statute does not authorize conditioning or limiting Patricia's, Nicholas's, and Matthew's damages in this way.

State Farm makes two arguments in response, neither of which we find persuasive. It argues that the cases relied on by the Jakupkos and the trial court do not support the conclusion that the statute has been violated here. Those cases (Veness and Am. Family Mut. Ins. Co. v. Federated Mut. Ins. Co., 775 N.E.2d 1198 (Ind. Ct. App. 2002)), State Farm says, involved situations where the insurer denied coverage altogether; here, State Farm paid the per person limit of $100,000. It is true that the insurance companies in those cases denied their respective insureds' claims in full. But while State Farm did honor Richard's claim here, it too denied the claims of its other insureds – Patricia, Nicholas, and Matthew.

Next, State Farm argues that courts from other jurisdictions with uninsured and underinsured motorist statutes similar to ours have found no statutory violation when an insurer imposed the type of "per person" provision used by State Farm here. The only two cases State Farm cites do not support this proposition; neither involves a policy condition on recovery of damages that an insured would otherwise be entitled legally to receive under the statute.[3]

State Farm's policy limits the damages that Patricia, Nicholas, and Matthew are legally

---

[3] In Mercury Insurance Co. v. Ayala, 11 Cal. Rptr. 3d 158, 162 (Cal. Ct. App. 2004), the court held that failing to provide a separate per person limit of liability for a loss of consortium claim did not violate the applicable statute. The Jakupkos do not present us with a loss of consortium claim here. In fact, because loss of consortium is not "bodily injury" in Indiana, Medley, 660 N.E.2d 1079, failing to provide a separate per person limit of liability for a loss of consortium claim would not violate our statute, either.

In Daley v. Allstate Insurance Co., 958 P.2d 990, 993-98 (Wash. 1998), the court concluded that the statutory expression "damages for bodily injury" did not include damages for emotional distress unrelated to an insured's physical injury. Because it did not, the language of the policy did not violate the statute. Nor do the Jakupkos present us with damages unrelated to an insured's physical injury. In fact, because damages for emotional distress unrelated to an insured's physical injury are not recoverable in Indiana, Wayne Township, 650 N.E.2d 1205; Armstrong, 785 N.E.2d 284; failing to provide a separate per person limit of liability for damages unrelated to an insured's physical injury would not violate our statute, either.

12

entitled to in a way that the statute governing uninsured and underinsured motorist insurance in our state does not authorize. Each is entitled to a separate per person limitation of $100,000, subject, however, to the per accident limitation of $300,000.

## Conclusion

The judgment of the trial court is affirmed.

Dickson, Boehm, and Rucker, JJ., concur. Shepard, C.J., concurs in result with separate opinion.

**Shepard, Chief Justice, concurring in result.**

I agree with my colleagues about how the statute and the policy operate to calculate the per person coverage limits.

As to the claims of the four plaintiffs, Richard Jakupko's injuries were so severe that they exceeded the limits of his coverage. Even if this were not so, I would say Richard's insurance coverage would include those elements customary to tort damages, such as pain and suffering that flow from bodily injury.

Richard's family members sustained lesser injuries in the accident, but likewise should be considered covered for their own standard common law damages.

Their emotional distress at witnessing Richard's injuries stands on a different footing. I do not read my colleagues' embrace of <u>Wayne Township</u> to suggest that a person who walks away from an accident without any damage to life or limb, not so much as a bruise, has suffered "bodily injury," because he or she is "distressed."